IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**RITA R. BROOKS**                                                              **PLAINTIFF**

**V.**                                **CIVIL ACTION NO. 2:13-CV-95-KS-MTP**

**ALLSTATE INSURANCE COMPANY**                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendant Allstate Insurance Company's Motion for Summary Judgment [8]. Having considered the submissions of the parties, the record, and the applicable law, the Court finds that the motion should be granted in part and denied in part.

## I.  BACKGROUND

The Plaintiff Rita R. Brooks ("Brooks" or "Plaintiff") seeks insurance benefits from Allstate Insurance Company ("Allstate") under Renters Insurance Policy No. 9 31 967186 02/04 (the "Policy") in this action. Brooks is the named insured under the Policy, covering Brooks' personal property located at 76 Old McIntosh Road, Collins, Mississippi, 39428 (the "Subject Property"). The Policy was in effect on December 31, 2009, when the residence at the Subject Property was heavily damaged and rendered uninhabitable by a fire.[1] At that time, Brooks leased the Subject Property from Mack Daniels, and lived at the Subject Property with her four children. Brooks subsequently asserted a loss claim under the Policy. On May 10, 2010, Allstate denied Brooks' claim. Allstate advised Brooks that it was exercising its right to cancel the Policy because she had made material misrepresentations regarding the age, value, and existence of items allegedly

---

[1] Brooks contends the residence and its contents were completely destroyed. Allstate generically asserts that the Subject Property "was damaged by fire . . . ." (Def.'s Statement of Undisp. Facts in Supp. of Mot. for SJ [10] at ¶ 3.)  Photographs of the Subject Property submitted by Brooks appear to show the house gutted by fire with only a few exterior walls still standing. (*See* Pl.'s Aff. [12-1 at ECF pp. 3-5].)

lost in the fire.

On April 4, 2013, Brooks filed suit against Allstate in the Circuit Court of Covington County, Mississippi. (*See* Compl. [1-1 at ECF p. 4].) Brooks alleged that Allstate breached its contractual obligation to provide benefits under the Policy. Brooks further claimed that Allstate's denial of coverage was without any factual or legal basis, and was so egregious as to constitute an independent tort. The Complaint demands compensatory damages for Allstate's alleged breach of the insurance contract and punitive damages for Allstate's purported bad faith denial of coverage.

On May 7, 2013, Allstate removed the proceeding to this Court. (*See* Notice of Removal [1].) Subject matter jurisdiction is asserted on the basis of diversity of citizenship under Title 28 U.S.C. § 1332.

On March 5, 2014, Allstate filed its Motion for Summary Judgment [8]. Allstate argues that it is entitled to summary judgment on the entire case because Brooks' actions violated the "Concealment Or Fraud" provision of the Policy. Allstate alternatively argues that Brooks' bad faith claim is due to be dismissed because it possessed an arguable basis for denying coverage, and because there is no evidence that it engaged in conduct justifying an award of punitive damages. In response, Brooks "agrees to withdraw or dismiss the claim for bad-faith denial of her insurance claim and punitive damages." (Pl.'s Resp. to Mot. for SJ [12] at p. 1.) Brooks, however, extensively opposes Allstate's request for summary judgment pursuant to its concealment-misrepresentation defense.

## II.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, 'the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case.'" *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (quoting *Shields v. Twiss*, 389 F.3d 142, 149 (5th Cir. 2004)). However, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant meets his burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial. *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d

736, 744 (5th Cir. 2002) (citing *Sec. & Exch. Comm'n v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### B. Allstate's Concealment-Misrepresentation Defense

The Policy states in pertinent part:

***Concealment Or Fraud***

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

(Policy [10-1 at ECF p. 27].) Insurance policy provisions precluding insureds from engaging in concealment are reasonable and enforceable under Mississippi law. *See Clark v. Aetna Cas. & Sur. Co.*, 778 F.2d 242, 245 (5th Cir. 1985) (citing *Taylor v. Firemen's Fund Ins. Co.*, 306 So. 2d 638, 644 (Miss. 1975)).² "In Mississippi, for an insurance company to defeat a policy on the basis of a 'concealment' clause, it must establish that statements by the insured were (1) false *and* (2) material *and* (3) knowingly and wilfully made." *Id.* (citing *Watkins v. Cont'l Ins. Cos.*, 690 F.2d 449 (5th Cir. 1982)). The insurer must prove these elements by a preponderance of the evidence. *McCord v. Gulf Guar. Life Ins. Co.*, 698 So. 2d 89, 92 (¶ 15) (Miss. 1997) (citing *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 215 (5th Cir. 1991)).

Allstate argues that the Plaintiff's actions violated the Policy's concealment

---

² The Court applies Mississippi's substantive law in this diversity case involving the interpretation of an insurance policy covering property located in Mississippi. *Cf. Consol. Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 425-26 (5th Cir. 2010) ("Because this diversity *case* involves 'the interpretation of insurance policies issued in Louisiana for property located in Louisiana,' that state's substantive law controls.") (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)).

provision and preclude coverage in three respects: (1) Plaintiff testified during her examination under oath ("EUO") that her sister, Patricia Brooks, gave her money to help purchase items that were destroyed in the fire, while Patricia Brooks denies giving the Plaintiff money to purchase the items; (2) Plaintiff inflated the number of items purportedly destroyed in the fire, as evidenced by a debris sift conducted by Robert Parker finding only approximately 47% of the items claimed by the Plaintiff; and (3) Plaintiff was financially unable to purchase the items purportedly destroyed in the fire, which she valued at $55,522.00. The Court finds that Allstate has failed to "establish beyond peradventure" its entitlement to summary judgment on any of these grounds. *Fontenot*, 780 F.2d at 1194.

### 1. Plaintiff's EUO Versus Her Sister's Statements

Plaintiff argues that her sister's statements referenced by Allstate are not competent summary judgment evidence because they are unsworn. Allstate has failed to rebut this assertion. The Court finds the Plaintiff's position well taken since "'[u]nsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991); *see also Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) (holding that a court may disregard unsworn expert reports in ruling on summary judgment) (citations omitted).

Even if Patricia Brooks' statements were sworn, Allstate would not be entitled to summary judgment. The Court's comparison of the Plaintiff and Patricia Brooks' actual averments, as opposed to Allstate's spin on and cherry picking of the same, fails to establish as a matter of law any knowing and willful misrepresentations on the part of the Plaintiff. The Plaintiff stated as follows regarding where she obtained funds to purchase items for the Subject Property:

> A. At the time, I used to save my money and buy what I want, cash, instead of just like going to get it on time. Sometime I may get a little stuff on time and go in there right off and pay it off. You know, they've got this thing called like 90-day purchase. You can do it that away and be through with it, or either -- my brother and them would help me buy it or -- at the time, my -- my -- Koesah -- at the time, I think in 2005, Koesha was getting a check.
>
> . . . .
>
> Q. I mean, you said your brothers would help you. Which brothers would help you?
>
> A. Every one of them. See, my momma raised us as together. If one ain't got, the other give. If one needs something that you got it, you give or either we all pitch in to help.
>
> Q. Well, when you would go down to Unclaimed Furniture and buy a $4,800 bedroom -- or living room set, did anybody help you buy that or did you pay for that yourself?
>
> A. My sister and them help me. They'll pitch in to help me get what I need.
>
> Q. Which sisters?
>
> A. All of them. I've got five of them.
>
> Q. Well, then, give me all your sisters' names and --
>
> A. Betty Brooks, Jennifer Brooks, Patricia Brooks, Tracy Brooks. How many I gave you? Dorothy Brooks. And that's all five of them.

(Pl.'s EUO [10-7], [10-8] at pp. 168-70.) Patricia Brooks offered the following related statements:

> Q. But do you ever give her any of your money to help her go out and buy stuff?
>
> A. Uh-uh (negative response).
>
> Q. Is that "no"?
>
> A. Uh-huh (affirmative response).
>
> Q. Okay. You're saying "no"?
>
> A. I'm saying no.
>
> . . . .

> A. No.  I don't give her my money.
>
> Q. All right.  Do you know of anybody --
>
> A. Now, sometimes if I like go out and see stuff, I may buy stuff like for the kids and stuff like that, but --
>
> Q. All right.  Do you know of anybody that was giving your sister any financial assistance?
>
> A. I mean, we've got brothers that help us out a lot.

(Doc. No. [10-9] at pp. 12-13.)  Viewing the facts and the resulting inferences in the nonmovant's favor, Patricia Brooks' statements actually comport with the Plaintiff's assertion that her family members sometimes assisted with the purchase of household items.

### 2. Robert Parker's Debris Sift

Allstate retained Robert Parker, the President of Fire Check, Inc., to conduct a debris sift at the Subject Property.  Parker conducted the debris sift on February 15, 2010, forty-six (46) days after the subject fire.  Parker's debris sift "did not find $26,020.67 or about 47% of the items claimed by Plaintiff."  (Def.'s Mem. in Supp. of Mot. for SJ [9] at p. 2.)  Allstate submitted an affidavit from Parker, incorporating by reference two reports, in support of its request for summary judgment.  (*See* Doc. No. [10-6].)  Allstate references Parker's findings in arguing that Brooks misrepresented the number of items lost in the fire in order to defraud Allstate of insurance proceeds.

Brooks asserts that Parker's affidavit and reports should be disregarded because Parker was not timely disclosed as an expert witness and because his findings do not conform to the requirements of Federal Rule of Evidence 702.  According to Brooks, Allstate never designated Parker as an expert witness or made expert disclosures as required by Federal Rule of Civil Procedure 26(a)(2).  Furthermore, there is no evidence of Parker's expertise in any field and his findings lack the foundation and reliability

necessary to warrant the admission of expert testimony. Allstate has also not rebutted these assertions.

Brooks posits that the issue "of whether certain articles of clothing, particular pieces of furniture, individual appliances, or other personal articles can be identified with any degree of accuracy by examining ashes and charred remains is, at best, a matter of special expertise." (Pl.'s Mem. in Opp. to Mot. for SJ [13] at p. 3.) The Court agrees. Parker's "fire debris analysis" at the Subject Property, where "some brick exterior walls were still intact but most of the interior walls and studs had been burned away",[3] conducted forty-six (46) days after the subject fire is subject to Rule 702. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ("[T]he Rule applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope."); *Butcher v. Allstate Ins. Co.*, No. 1:06cv423, 2009 WL 301822, at *3 (S.D. Miss. Feb. 5, 2009) (refusing to strike the plaintiff's expert witness who relied on the most generally accepted methodology for his fire debris analysis and fire scene investigation).[4] Therefore, Allstate's apparent failure to make full expert disclosures regarding Robert Parker weighs against the Court's consideration of his opinions at this stage of the litigation. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to

---

[3] (Doc. No. [10-6 at ECF pp. 3, 4].)

[4] *See also* Fed. R. Evid. 702 advisory committee's note ("The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.' Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values.").

provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); L.U.Civ.R. 26(a)(2)(B) (stating that an untimely expert witness designation may be stricken sua sponte by the court).

The applicability of Rule 702 also triggers this Court's "gatekeeping obligation" to ensure that all expert testimony is both reliable and relevant. *Kumho Tire Co.*, 526 U.S. at 147 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). In order to be reliable under Rule 702, the expert opinion must "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citations omitted). A trial court must ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. Mr. Parker's qualifications to perform a fire debris analysis have not been presented to the Court. *See United States v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997) ("[T]he proponent of expert testimony must establish the witness's qualifications by a preponderance of proof . . . .") (citation omitted). Furthermore, Mr. Parker's described methodology for determining the existence of household items destroyed in the subject fire, "[a]ll areas inspected this day were sifted for contents & all contents were examined, documented & photographed",[5] is too conclusory and generic to pass Rule 702 muster. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendments (Under *Daubert*, the court asks whether the

---

[5] (Doc. No. [10-6 at ECF p. 4].)

expert's technique or "theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability . . . ."). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

Even overlooking the above-discussed evidentiary problems with Robert Parker's fire debris analysis, his findings fail to mandate a grant of summary judgment in Allstate's favor. Brooks has submitted an affidavit in opposition to summary judgment, stating, *inter alia*, that approximately one week after the fire she observed the owner of the Subject Property, along with some of his children, digging in the ashes on the premises. (Pl.'s Aff. [12-1] at p. 1.) Brooks further states, "[t]he fire destroyed the house and everything in it." (Pl.'s Aff. [12-1] at p. 2.) One of Robert Parker's reports notes that some items "had been removed from the house" and that it was "impossible to distinguish one room from another . . . ." (Doc. No. [10-6 at ECF p. 4].) Based on these statements, it is not unreasonable to infer that some of the items Parker was unable to locate may have been moved between the time of the fire and his inspection forty-six days later. It is also not beyond reason to presume that some of the missing items were destroyed beyond recognition in the fire. A reasonable jury may find these explanations for Parker's debris sift failing to uncover evidence of all of Brooks' claimed items more plausible than Brooks' alleged fraud.

### 3. Plaintiff's Financial Ability to Purchase the Items Destroyed in the Fire

Allstate contends Brooks' EUO establishes she was operating at a deficit of $264.00 per month, which means she was unable to afford all of the items purportedly

destroyed in the fire. This argument fails to consider Brooks' above-quoted testimony to the effect that family members sometimes assisted with the purchase of household items. Allstate also ignores the possibility that Brooks made "an honest mistake" in estimating the value of items destroyed in the fire. *Republic Fire & Cas. Ins. Co. v. Azlin*, No. 4:10cv037, 2012 WL 4482355, at *11, 12 (N.D. Miss. Sept. 26, 2012) (denying the insurer's request for summary judgment based on the insured's alleged breach of a fraud/concealment policy provision). Brooks' affidavit states that she had to estimate the costs of her lost items in completing the insurance loss form since her receipts were destroyed in the fire. (Pl.'s Aff. [12-1] at p. 1.)

Ultimately, a jury, with its ability to listen to live testimony, weigh evidence, and make credibility determinations, would be in a better position than the Court to determine if Brooks knowingly made material misrepresentations during the claims process. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 612 n.3 (5th Cir. 2009) (noting the well-established prohibition against a district court making credibility determinations or weighing evidence in ruling on summary judgment) (citation omitted); *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 144 (5th Cir. 2004) ("[S]ummary judgment is rarely proper in fraud cases because the intent required to establish fraud is a factual question uniquely within the realm of the trier of fact because it so depends upon the credibility of witnesses.") (citation and internal quotation marks omitted); *accord Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 642 (Miss. 1996) (citing cases standing for the proposition that allegations of fraud and misrepresentation are generally inappropriate for disposition at the summary judgment stage). The Court declines to usurp the role of the jury in this cause. Allstate's request for summary judgment pursuant to its concealment-misrepresentation defense is refused due to the existence of jury issues.

  **C.**  **Plaintiff's Bad Faith Claim**

As noted above, Brooks has agreed to the dismissal of this claim. Thus, Allstate's alternative request for summary judgment on Brooks' bad faith denial of coverage claim and resulting demand for punitive damages will be granted as confessed.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Allstate's Motion for Summary Judgment [8] is granted in part and denied in part. The motion is granted to the extent that the Plaintiff's claim for bad faith denial of insurance coverage (including the Plaintiff's request for punitive damages) is dismissed with prejudice. The motion is otherwise denied.

SO ORDERED AND ADJUDGED this the 12th day of June, 2014.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE